NOT FOR PUBLICATION                          [Doc. No. 7]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

ALEXYE YAGODA,                      :
                                    :
                Plaintiff,          :
                                    :     Civil No. 08-1901 (RMB)
        v.                          :
                                    :
STRANG CORPORATION and AMERICAN     :     **OPINION**
BREAD COMPANY, LLC,                 :
                                    :
                Defendants.         :


Appearances:

        Laura C. Mattiacci
        Caren Nancy Gurmankin
        Stephen G. Console
        Console Law Offices LLC
        1525 Locust Street, 9th Floor
        Philadelphia, PA 19102
                Attorney for Plaintiff.

        Sarah E. Bouchard
        Sean W. Sloan
        Morgan, Lewis & Bockius LLP
        1701 Market Street
        Philadelphia, PA 19103
                Attorney for Defendants.


**BUMB,** United States District Judge:

        This matter comes before the Court on a motion to dismiss

and compel arbitration, brought by Defendants Strang Corporation

and American Bread Company (the "Defendants").  Plaintiff Alexya

1

Yagoda (the "Plaintiff") was employed as a retail manager by Defendants. She filed this lawsuit alleging gender-based discrimination that created a hostile work environment and ultimately led to her termination. Defendants filed this motion to enforce an arbitration agreement that Plaintiff signed at the start of her employment. For the following reasons, the Court grants Defendants' motion and dismisses the Complaint without prejudice.

## I. Statement of Facts

Plaintiff was employed by Defendants from June 2003 to October 2006, in various management positions at their Panera Bread Stores in North Whales and Mount Laurel, New Jersey. In that time, Plaintiff alleges that she experienced bias on account of her gender, and was subjected to discrimination and a hostile work environment. Plaintiff alleges that her employment was terminated in October 2006 as a result of this gender-based bias.

In June 2003, on Plaintiff's first day working for Defendants, she signed a standardized agreement that Defendants had used since 2001, (the "2001 Agreement"), which required, inter alia, compulsory arbitration for employment-related disputes in lieu of filing a lawsuit in court. The 2001 Agreement provided, in pertinent part,

Claims and disputes subject to arbitration include all those legal claims you may now or in the future have

2

against the Company or against its officers, directors,
shareholders, employees, or agents, . . . and all claims
that the Company may now or in the future have against
you . . . .   The legal claims subject to arbitration
include, but are not limited to: . . . sexual harassment;
discrimination (including, but not limited to claims
based on race, sex, religion, national origin, age,
medical condition or disability whether under federal
state or local law) . . . .

(Def. Mot. to Dis., Ex. A, at 7.)   The 2001 Agreement later

continues:

In signing this Agreement, both the Company and I agree
that all legal claims or disputes covered by the
Agreement must be submitted to binding arbitration and
that this binding arbitration will be the sole and
exclusive final remedy for resolving any such claim or
dispute.

(Def. Mot. to Dis., Ex. A, at 11.)   In 2005, Defendants began

using a new standardized agreement (the "2005 Agreement"), which

by its terms supplanted the 2001 Agreement.   Plaintiff did not

sign the 2005 Agreement.[1]   Plaintiff's employment was terminated

in October 2006, and she filed this lawsuit in April 2008.

Seeking to enforce the 2001 Agreement, Defendants filed this

motion to dismiss and compel arbitration.


II.   **Standard of Review**

Motions to compel arbitration are reviewed under the

---

[1] Plaintiff seems to suggest that current employees were
asked to sign the 2005 Agreement and she declined.   Defendant
contends that only newly hired employees were asked to sign the
2005 Agreement.   This fact dispute, if it is a dispute, is
immaterial to the Court's decision.

standard for summary judgment found in Fed. R. Civ. P. 56(c).
Markel Int'l Ins. Co. v. Westchester Fire Ins. Co., 442 F. Supp.
2d 200, 202 (D.N.J. 2006) (citing InterDigital Comm. Corp. v.
Fed. Ins. Co., 392 F. Supp. 2d 707, 711 (E.D. Pa. 2005)).
Summary judgment shall be granted if there is no genuine issue as
to any material fact and the moving party is entitled to a
judgment as a matter of law.  Fed. R. Civ. P. 56(c); see also
Hersh v. Allen Products Co., 789 F.2d 230, 232 (3d Cir. 1986).  A
dispute is "genuine" if "the evidence is such that a reasonable
jury could return a verdict for the non-moving party."  Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is
"material" only if it might affect the outcome of the suit under
the applicable rule of law.  Id.  Disputes over irrelevant or
unnecessary facts will not preclude a grant of summary judgment.
Id.  "In making this determination, a court must make all
reasonable inferences in favor of the non-movant."  Oscar Mayer
Corp. v. Mincing Trading Corp., 744 F. Supp. 79, 81 (D.N.J. 1990)
(citing Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d
Cir. 1983)).  "At the summary judgment stage the judge's function
is not himself to weigh the evidence and determine the truth of
the matter but to determine whether there is a genuine issue for
trial."  Anderson, 477 U.S. at 249.

**III. Analysis**

     Defendant files this motion to dismiss and compel
arbitration to enforce the 2001 Agreement, which requires
Plaintiff to arbitrate all employment disputes with Defendant,
rather than litigate these disputes in court.  For the purposes
of this motion, Plaintiff does not challenge: (i) the existence
of the 2001 Agreement, (ii) that Plaintiff is a party to the 2001
Agreement, or (iii) Defendant's interpretation of the terms of
the 2001 Agreement.  Plaintiff nonetheless argues that it may
litigate its employment discrimination claim before this Court,
rather than arbitrate the dispute as the 2001 Agreement requires,
because: first, the 2001 Agreement was nullified by a later
contract, the 2005 Agreement, to which Plaintiff was not a party;
or, in the alternative, second, the 2001 Agreement's arbitration
provision is both procedurally and substantively unconscionable
and is therefore unenforceable.  The Court will address each of
these arguments in turn, and in doing so, its analysis will be
governed by the law of the State of New Jersey.[2]

_____

     [2]  Federal courts sitting in diversity look to the law of
the forum state in making a choice of law determination.
Hammersmith v. TIG Ins. Co., 480 F.3d 220, 226 (3d Cir. 2007)
(citing Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941)).
Under New Jersey law, courts will uphold a choice of law
provision in a contract so long as it is not in violation of the
public policy of the state.  Kalman Floor Co. v. Jos. L.
Muscarelle, Inc., 481 A.2d 553, 555 (N.J. Super. Ct. App. Div.
1984) (citing, Crinnion v. The Great Atlantic & Pacific Tea Co.,
384 A.2d 159 (N.J. Super. Ct. App. Div. 1978); Knollmeyer v.
Rudco Indus., Inc., 381 A.2d 378 (N.J. Super. Ct. App. Div.

**A. Effect of the 2005 Agreement**

Plaintiff concedes that she signed the 2001 Agreement, which compels arbitration to resolve legal disputes. (Pl. Op. Br. at 1.) However, Plaintiff contends that the 2001 Agreement is no longer enforceable against her, because Defendants replaced the 2001 Agreement with the 2005 Agreement, which abrogates the 2001 Agreement. The 2005 Agreement characterizes itself as the "exclusive means" of conflict resolution and says that it "takes the place of any other verbal or written understanding on this subject." (Pl. Op. Br. at 5). Plaintiff is not a party to the 2005 Agreement.

Plaintiff seeks both to have her proverbial cake, and to eat it too. Although Plaintiff is correct that the 2005 Agreement explicitly supplants the 2001 Agreement, she readily admits that she did not sign the 2005 Agreement. By arguing that the 2005 Agreement invalidates the 2001 Agreement, Plaintiff seeks to assume a benefit of the 2005 Agreement while disclaiming its burdens. She cannot have it both ways. See County of Morris v. Fauver, 153 N.J. 80, 97, 707 A.2d 958 (1998) ("If a party were allowed to repudiate the unfavorable parts of a contract and

--------

1977); Restat. 2d of Conflict of Laws, § 187 at 561 (1971)). Page 8 of the 2001 Agreement states that "the substantive law . . . in the state in which the claim arose" governs disputes under the agreement. (Def. Mot. to Dis., Ex. A.)

claim the benefit of the residue, it would amount to unjust enrichment and would bind the parties to a contract which they did not contemplate." (internal citation omitted)).  Plaintiff is either a party to the 2005 Agreement, in which case the provisions of that agreement control, or she is not, in which case the provisions of that agreement do not control.

Even if this Court were to accept, arguendo, Plaintiff's contention that statements contained in the 2005 Agreement are binding upon Defendants in this case, this still would not invalidate the 2001 Agreement, since Defendants lacked consideration in disclaiming its preexisting contract.  To be effective, a modification of preexisting contractual duties must be accompanied by consideration.  County of Morris v. Fauver, 153 N.J. 80, 100, 707 A.2d 958 (1998); see also Ross v. Orr, 3 N.J. 277, 282, 69 A.2d 730 (1949) ("[T]he terms of an agreement may be altered or changed by a subsequent agreement if based on proper consideration.").  A party's mere statement that a preexisting contract is no longer operative, absent any new consideration, does not nullify the contract.  Fauver, 153 N.J. at 99-100.  Plaintiff does not allege that she tendered any new benefit to Defendants, or undertook any new duty, as consideration for Defendant's abrogation of the 2001 Agreement.  The statements contained in the 2005 Agreement (which is an agreement between the Defendants and others) therefore have no effect on

7

Plaintiff's duties under the 2001 Agreement.  This holding is consistent with a prior decision of this Court, <u>Bloom v. Jersey City Mun. Utilities Authority</u>, Slip Op., 2008 WL 360986 (D.N.J. Feb. 8, 2008), which similarly held that a later agreement to which the plaintiff was not a party did not invalidate a preexisting contract.  The Court reiterates that holding today.

### B. Unconscionability

Having concluded that Plaintiff is bound by the 2001 Agreement, the Court now turns to the question of whether the 2001 Agreement is unenforceable on the grounds of unconscionability.  The 2001 Agreement provides in pertinent part,

> Claims and disputes subject to arbitration include all those legal claims you may now or in the future have against the Company or against its officers, directors, shareholders, employees, or agents, . . . and all claims that the Company may now or in the future have against you . . . .  The legal claims subject to arbitration include, but are not limited to: . . . sexual harassment; discrimination (including, but not limited to claims based on race, sex, religion, national origin, age, medical condition or disability whether under federal state or local law) . . . .

(Def. Mot. to Dis., Ex. A, at 7.)  The 2001 Agreement later continues:

> In signing this Agreement, both the Company and I agree that all legal claims or disputes covered by the Agreement must be submitted to binding arbitration and that this binding arbitration will be the sole and

exclusive final remedy for resolving any such claim or
dispute.

(Def. Mot. to Dis., Ex. A, at 11.)

The Federal Arbitration Act ("FAA") was enacted "to reverse
the longstanding judicial hostility to arbitration agreements . .
. and to place arbitration agreements upon the same footing as
other contracts." Green Tree Financial Corp.-Alabama v.
Randolph, 531 U.S. 79, 89 (2000) (quoting Gilmer v.
Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991)). "[T]he
FAA establishes a strong federal policy in favor of resolution of
disputes through arbitration and, absent fraud or
misrepresentation, requires enforcement of arbitration clauses
within agreements for which parties freely contract." Litman v.
Cellco Partnership, Slip Op., 2008 WL 4507573 (D.N.J. Sept. 29,
2008) (citing Morales v. Sun Constructors, 541 F.3d 218, 221-23
(3d Cir. 2008)). New Jersey shares this "strong public policy .
. . favoring arbitration as a means of dispute resolution . . .
." Alamo Rent-A-Car, Inc. v. Galarza, 306 N.J. Super. 384, 389,
703 A.2d 961 (1997). New Jersey courts have described this
public policy as "compelling," Gras v. Associates First Capital
Corp., 346 N.J. Super. 42, 54, 786 A.2d 886 (2001), and have
insisted that the State accords a "favored status" to
arbitration. Alamo, 306 N.J. at 389. Nonetheless, "arbitration
provisions may be attacked under such grounds as exist at law or
in equity for the revocation of a contract." Morales, 541 F.3d

at 221.  Thus, arbitration agreements have a strong presumption
of validity, but will not be enforced if genuinely
unconscionable.  See, e.g., Muhammad v. County Bank of Rehoboth
Beach, 189 N.J. 1, 12, 912 A.2d 88 (2006).  The burden of proof
lies with the Plaintiff, the party challenging the arbitration
provision as unconscionable.  See, e.g., Harris v. Green Tree
Financial Corp., 183 F.3d 173, 181 (3d Cir. 1999).

New Jersey courts analyze two factors in making
determinations of unconscionability: (1) procedural
unconscionability, or "unfairness in the formation of the
contract," which "can include a variety of inadequacies, such as
age, literacy, lack of sophistication, hidden or unduly complex
contract terms, bargaining tactics, and the particular setting
existing during the contract formation process," and (2)
substantive unconscionability, which generally involves harsh,
unfair, or disproportionately one-sided terms.  Sitogum Holdings,
Inc. v. Ropes, 352 N.J. Super. 555, 564-66, 800 A.2d 915 (2002).

### 1. Procedural Unconscionability

Plaintiff argues that the 2001 Agreement is unconscionable
because she lacked a meaningful choice when she entered the
agreement, which she contends is a contract of adhesion.  (Pl.
Op. Br. at 16.)  Defendants do not dispute that the 2001
Agreement is a contract of adhesion.  "[T]he essential nature of

a contract of adhesion is that it is presented on a take-it-or-leave-it basis, commonly in a standardized printed form, without opportunity for the 'adhering' party to negotiate except perhaps on a few particulars." <u>Rudbart v. North Jersey Dist. Water Supply Comm'n</u>, 127 N.J. 344, 353, 605 A.2d 681, <u>cert. denied</u> 506 U.S. 871 (1992).  However, "[t]he finding of an adhesive contract is not dispositive of the issue of enforceability.  Such a finding is the beginning, not the end, of the inquiry." <u>Gras</u>, 346 N.J. Super. at 48 (internal citation omitted).  The gravamen of the procedural unconscionability inquiry is whether one party lacked a meaningful choice in entering the agreement.  <u>Lucey v. FedEx Ground Package Systems, Inc.</u>, Slip Op., 2007 WL 3052997, *4 (D.N.J. Oct. 18, 2007).

   The 2001 Agreement lacks the indicia of procedural unconscionability necessary to invalidate an adhesion contract. Plaintiff does not allege that she could not have understood the contract terms or that the terms were either hidden or unduly complex.  "[M]ere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." <u>Gilmer</u>, 500 U.S. at 33. In fact, "[v]irtually every court that has considered the adhesive effect of arbitration provisions in . . . employment agreements has upheld the arbitration provision contained therein despite potentially unequal bargaining power between employer and

employee." <u>Martindale v. Sandvik</u>, 173 N.J. 76, 90-91, 800 A.2d
872 (2002).

Plaintiff urges the Court to draw an analogy between the
2001 Agreement and the agreement at issue in a recent exceptional
case in which this Court found procedural unconscionability from
an inequality of bargaining power.  In that case, <u>Lucey v. FedEx
Ground Package Systems, Inc.</u>, the plaintiff-employees "had
already purchased their delivery trucks [at their own expense],
attended training sessions, and financially committed themselves
to work for FedEx" before being presented with the arbitration
agreement.  Slip Op., 2007 WL 3052997, *5 (D.N.J. Oct. 18, 2007).
Here, by contrast, Plaintiff "was presented with the 2001
Agreement . . . on the first day of her employment."  (Pl. Op.
Br. at 17.)  Unlike the employees in <u>Lucey</u>, Plaintiff had not
made any significant commitment of time or money when she was
presented with the 2001 Agreement.  The analogy to <u>Lucey</u> is
therefore inapt.[3]

---

[3] Plaintiff asserts that she lacked a meaningful choice when
presented with the 2001 Agreement.  To the contrary, it seems
Plaintiff would have had a number of options, none of which she
addresses in her papers.  For example, she could have asked for
time to consult an attorney before assenting to the 2001
Agreement; she could have inquired as to whether signing the
agreement was, in fact, required, or whether she could decline to
sign the agreement while still keeping her new job; she could
have inquired as to whether some modifications to the agreement
would be permitted; or, she could have declined employment
altogether.

## 2. Substantive Unconscionability

Neither is the 2001 Agreement substantively unconscionable. Plaintiff objects to discovery limitations and departures from the Rules of Evidence permitted by the 2001 Agreement.  Plaintiff argues that these rules governing the arbitration process are imprudent.  Imprudence, however, is not the standard of substantive unconscionability.  "An arbitration provision is substantively unconscionable when it unreasonably favors the party with greater bargaining power." Lucey, 2007 WL 3052997, *6.  This typically occurs when the arbitration agreement does not apply to each party equally.  See, e.g., Contorno v. Wiline Networks, Inc., Slip Op., 2008 WL 1944825, *6 (D.N.J. May 1, 2008); Delta Funding Corp. v. Harris, 396 F. Supp. 2d 512, 521 (D.N.J. 2004).  The Supreme Court of New Jersey recently found a contract term barring class arbitration to be substantively unconscionable, because, "To permit the defendants to contest liability with each claimant in a single, separate suit, would, in many cases give defendants an advantage which would be almost equivalent to closing the door of justice to all small claimants." Muhammad, 189 N.J. at 20 (emphasis added).  By contrast, the 2001 Agreement terms apply to both claimants and defendants equally.  Both sides may find discovery limitations to be inconvenient or even unfair.  Either side may find the admissibility of hearsay and other departures from the Rules of

13

Evidence to be an advantage or disadvantage.  But the terms of the 2001 Agreement do not unreasonably prejudice either claimants or defendants.

This Court has held that "[w]hile limitations on discovery do not necessarily render an arbitration provision invalid, the limitations must not be so restrictive such that the allowed discovery 'will prove insufficient to allow [Plaintiffs] a fair opportunity to present their claims.'"  Lucey, 2007 WL 3052997, *12 (citing Gilmer, 500 U.S. at 31).  In Ostroff, 433 F. Supp. 2d at 545, the arbitration agreement limited discovery to the deposition of expert witnesses.  The arbitration agreement at issue in Lucey went even further, barring all written and deposition discovery.  Here, the 2001 Agreement limits the parties to two depositions unless the arbitrator determines that additional depositions are needed, and any other discovery that the arbitrator considers necessary to a full and fair exploration of the issues in dispute.  These limitations do not reach nearly as far as those at issue in Lucey and Ostroff, and do not advantage any one party over the other.

Finally, the Court notes that the very purpose of arbitration is to avert the extraordinary expense of time, money, and other resources that often accompanies litigating a case in court.  The arbitration process therefore must constrain the disputing parties; they will necessarily lack the flexibility --

14

particularly in obtaining discovery -- that a trial affords. Plaintiff's quarrel, therefore, is not with the particular provisions of the 2001 Agreement, but with the arbitration process generally.

### C. Request for Additional Discovery

Finally, Plaintiff has requested leave to take discovery regarding what she characterizes as "the bias of AAA's [(the American Arbitration Association's)] process and procedures." (Pl. Op. Br. at 27.)  Plaintiff seeks to take discovery on such things as the history of every AAA arbitrator to assess conflicts of interest, the results of every AAA employment discrimination case, and AAA's process for the selection of arbitrators.

Since inquiry into these matters would not change the Court's decision on this motion, and since these matters are more appropriately taken up with the arbitrator selected to adjudicate Plaintiff's claim, the Court denies Plaintiff's request.

### IV.  CONCLUSION

For the foregoing reasons, the Court finds that the 2001 Agreement compelling arbitration is valid and enforceable. Defendants' motion to dismiss and compel arbitration is GRANTED.

                                        s/Renée Marie Bumb
                                        RENÉE MARIE BUMB
                                        United States District Judge

Dated: October 16, 2008

15